UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

APERTURE NET LLC,

Plaintiff,

v.

HTC AMERICA INC,

Defendant.

CASE NO. 2:19-cv-01746-RAJ-BAT

**REPORT AND RECOMMENDATION**

Defendant HTC America Inc. ("HTC") moves to dismiss the Amended Complaint (Dkt. 16) of Plaintiff Aperture Net LLC ("Aperture"). Dkt. 19. This matter has been referred to United States Magistrate Judge Brian A. Tsuchida, pursuant to Local Rule MJR 6 and General Order 02-19. Dkt. 9.

The parties have adequately briefed their positions and the motion may be resolved without oral argument. Being fully advised, the undersigned recommends that HTC's motion be granted in part and denied in part, as detailed herein.

BACKGROUND

A. Procedural Background

Aperture filed its original complaint on October 10, 2019 alleging infringement of U.S. Patent No. 6,711,204, titled "Channel Sounding for a Spread-Spectrum Signal" (the '204 Patent

or "Patent-in-Suit"), invented by Donald L. Schilling. Dkt. 1. On January 21, 2020, HTC filed a motion to dismiss. Dkt. 10. In response, Aperture filed an Amended Complaint on February 10, 2020. Dkt. 16. On February 24, 2020, Defendant HTC filed a motion to dismiss the Amended Complaint for failure to state a claim. Dkt. No. 19, 20.

B. Allegations – Amended Complaint – Dkt. 16

The '204 Patent was filed on July 29, 2001, and legally issued by the United States Patent and Trademark Office ("USPTO") on March 23, 2004. Dkt. 16, ¶ 13. Aperture is the owner by assignment of the '204 patent. Id., ¶ 14. The '204 Patent teaches "systems and methods for improving a spread-spectrum code-division-multiple-access ("CDMA") system, using a channel sounding signal from a base station to provide initial transmitter power levels for remote stations" *Id.*, ¶ 9. The '204 Patent addresses concerns related to power control, which previously suffered from inconsistency, inefficiency, and excessive delays, by permitting a remote power station to have knowledge, prior to transmitting, of a proper power level to initiate transmission, and to measure and correct or compensate for Doppler shift in carrier frequency caused by the motion of the remote station. *Id.*, Ex. A, '204 Patent, 1:21–2:5; 2:7-10.

HTC makes, uses, offers for sale and sells in the U.S. products, systems, and/or services that infringe the Patent-in-Suit, including, but not limited to its HTC U Ultra, HTC U11, HTC Bolt, HTC 10, HTC One M9, HTC U12+, HTC U11 Life, HTC One M7, HTC One A9, HTC One Max, HTC One Remix, HTC One Mini, HTC One M8, and HTC Droid DNA products (the "Accused Products"). Dkt. 16, ¶ 11. HTC directly infringed "one or more claims of the '204 Patent by practicing every element of the claimed inventions, including, through the use of their hotspot-enabled Accused Products acting as base stations…". *Id.*, ¶ 17; Ex. A (Table detailing HTC's alleged infringement). *Id.*

HTC has directly infringed one or more claims of the ‘204 Patent, including Claim 3, “which HTC controls by placing every element of [Aperture’s] patented inventions into service and receiving a benefit therefrom,” *i.e.* through its contractual relationships with wireless carriers such as Verizon, T-Mobile, and AT&T, who provide base stations. *Id.*, ¶ 18; Ex. B (Claim Chart re: infringement of Claim 3); Ex. C.

HTC has contributorily infringed the ‘204 Patent because HTC had knowledge that third parties (*i.e.*, HTC’s customers) would engage in an infringing use, either through the use of the Accused Products in hotspot mode, or by controlling wireless carriers’ base stations (with whom HTC has contracts), to allow end users to use the base stations for voice and data plans. Dkt. 16, ¶ 19; Ex. C. Aperture also alleges that HTC’s implementation of the accused functionality has no substantial non-infringing uses, *i.e.*, the Accused Products adhere to the IEEE 802.011 standard when providing hotspot functionality and thus necessarily infringe. Dkt. 16, ¶ 20.

HTC knew that third parties such as their customers, would engage in an infringing use of the ‘204 patent (whether through use of the Accused Products in hotspot mode or by controlling wireless carrier’s base stations) because HTC: (1) included a component in the Accused Products that can only infringe; (2) in its prior art searches and freedom to operate analyses, would have become aware of dozens of patents related to CDMA/spread-spectrum technology invented by Donald Schilling; (3) was involved in prior litigation where Schilling’s spread-spectrum patents were at issue, *i.e.*, *See Golden Bridge Tech., Inc. v. Apple, Inc.*, No. 2:12-CV-04014-ODW-FFMx (C.D. Cal. Jul. 18, 2012) (concerning infringement by HTC and subsidiaries Schilling’s patent No. 6,075,793, titled “High efficiency spread spectrum system and method”); *see also Golden Bridge Tech, Inc. v. Apple, Inc.*, No. CV-12-04882-PSG (N.D. Cal. Feb. 20, 2014)); (4) knew of spread-spectrum technology through the prosecution of its own patents (*i.e.*, HTC’s

Patent US-8576693-B2 cites Patent US-5073899-A "Transmission system for sending two signals simultaneously on the same communications channel."); and/or (5) was willfully blind. *Id.*, ¶ 21.

HTC induced infringement of the '204 Patent by third parties, such as its customers by publishing instruction manuals for using its product in an infringing manner and HTC advertised infringing uses of the '204 patent. Dkt. 16, ¶¶ 22-23 (citing HTC customer support websites). HTC's customers' subsequent usage of the Accused Products to communicate *via* CDMA networks placed every element of the various protected Claims of the '204 Patent into service. *Id.* For the same reasons alleged with respect to contributory inducement (*i.e.*, prior art searches, prior litigation, HTC's prosecution of its own patents; and/or willful blindness), Aperture alleges that HTC had knowledge that third parties, such as their customers, would infringe the '204 Patent. *Id.*, ¶ 24.

HTC's infringement of the '204 Patent has been willful as HTC holds 63 patents related to the claimed technology and possesses knowledge of the '204 Patent through its prosecution of these patents, prior art searches, and prior litigation involving the same inventor of the '204 Patent on similar subject matter. *Id.*, ¶ 25.

Aperture sues for direct, indirect, and willful patent infringement and seeks monetary damages, treble damages for willful infringement, and injunctive relief. *Id.*, ¶ 27.

## DISCUSSION

### A. Legal Standard

Since December 1, 2015, allegations of direct infringement are now subject to the same pleading standards that govern any other claim brought in federal court. *Incom Corp. v. Walt Disney Co.*, No. CV15-3011 PSG (MRWx), 2016 WL 4942032, at *3 (C.D. Cal. Feb. 4, 2016)

(Form 18 is no longer a safe harbor for pleading direct infringement; rather, the more stringent pleading standard set forth in *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) apply).

Accordingly, dismissal for failure to state a claim "is proper if there is a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011) (internal quotation marks omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Although the standard "asks for more than sheer possibility that a defendant has acted unlawfully," it is not "akin to a probability requirement." *Id*. Thus, the plausibility requirement "simply calls for enough fact[s] to raise a reasonable expectation that discovery will reveal" liability for the misconduct alleged. *Twombly*, 550 U.S. at 556.

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court construes the complaint in the light most favorable to the nonmoving party. *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F. 3d 940, 946 (9th Cir. 2005). The court must accept all well-pleaded facts as true and draw all reasonable inferences in favor of the plaintiff. *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). "Mere conclusory statements" or "formulaic recitation[s] of the elements of a cause of action," however, "are not entitled to the presumption of truth." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (citing *Twombly*, 550 U.S. at 555). On a motion to dismiss, the court may

consider the pleadings, documents attached to the pleadings, documents incorporated therein, or matters of judicial notice. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (citing *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002)).

Leave to amend must be granted unless it is clear that the complaint's deficiencies cannot be cured by amendment. *Lucas v. Dep't of Corrections*, 66 F.3d 245, 248 (9th Cir.1995). When amendment would be futile, dismissal may be ordered with prejudice. *Dumas v. Kipp*, 90 F.3d 386, 393 (9th Cir.1996).

B. Claims for Post-Expiration Infringement Damages and Injunctive Relief

When a patent expires, it cannot be infringed. *Kearns v. Chrysler Corp*., 32 F.3d 1541, 1550 (Fed. Cir. 1994) ("Because the rights flowing from a patent exist only for the term of the patent, there can be no infringement once the patent expires."). Additionally, when the rights secured by a patent are no longer protectable by virtue of expiration or unenforceability, entitlement to injunctive relief becomes moot because such relief is no longer available. *Id.* (citing *Illinois Tool Works, Inc. v. Grip–Pak, Inc.*, 906 F.2d 679, 681, 15 USPQ2d 1307, 1308 (Fed.Cir.1990)).

It is not disputed that the '204 Patent expired on January 14, 2019, prior to the filing of Aperture's complaint in this case. In its Amended Complaint, Aperture alleges ongoing direct and indirect infringement. *See e.g.*, Dkt. 16 ¶¶ 15,16 ("Defendant ... continues to infringe on one or more claims of the '204 Patent—directly, contributorily, and/or by inducement—by importing, making, using, offering for sale, or selling products and device....")). Aperture also requests a preliminary and permanent injunction. (Dkt. 16 ¶ 27 (d)).

However, in its response to HTC's motion to dismiss, Aperture states that it "is not seeking damages beyond the Patent-in-Suit's expiration." Dkt. 21, p. 2 fn. 1. Accordingly, any

claim for post-expiration damages and for injunctive relief should be dismissed.

C. Direct Infringement

HTC argues that Aperture has failed to state a claim of direct infringement because its claim requires both a "remote station" (*i.e.*, one of HTC's smartphones) and a "base station" (either a cellular wireless network or one of HTC's smartphones broadcasting a WiFi signal). *See generally*, Dkt. 19, at p. 8. Under the first theory (where the cellular wireless network provides the "base station"), HTC argues that Aperture has failed to adequately plead how HTC could have met the base station" limitation when the base station was allegedly operated by a non-HTC entity. Under the second theory (where an HTC smartphone acts as a "base" through a hotspot), HTC argues that Aperture has failed to adequately identify a direct infringer who allegedly uses the system.

In the patent context, it is not enough to "[m]erely nam[e] a product and provid[e] a conclusory statement that it infringes a patent." *Incom Corp*., 2016 WL 4942032, at *3. "Sufficient allegations would include, at a minimum, a brief description of what the patent at issue does, and an allegation that certain named and specifically identified products or product components also do what the patent does, thereby raising a plausible claim that the named products are infringing" *Bender v. LG Elecs. U.S.A., Inc*., No. C09-02114 JF (PVT), 2010 WL 889541, at *6 (N.D. Cal. Mar. 11, 2010) (discussing viability of a patent complaint under the pleading standards of *Twombly* and *Iqbal*.) Such allegations would "provide enough specificity for the defendant to formulate a response" and "permit the [c]ourt to 'draw the reasonable inference that the defendant is liable for the misconduct alleged."' *Id*. (quoting *Iqbal*, 556 U.S. at 678).

Additionally, the "plausibility standard 'does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence' to support the plaintiff's allegations." *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1350 (Fed. Cir. 2018) (citing *Twombly*, 550 U.S. at 556). Moreover, the Court need not resolve disputes regarding claim construction, as this is particularly inappropriate in the Rule 12(b)(6) context. *See Nalco*, *id*. at 1349.

With these provisos in mind, the undersigned finds that Aperture has sufficiently plead direct infringement. The amended complaint does more than name a product and baldly conclude that it infringes the "204 Patent. Aperture alleged direct infringement by HTC by two methods – through the use of the Accused Products in hotspot mode and by control of base stations of certain wireless carriers (with whom HTC has contracts), to allow end users to use the base stations for voice and data plans. Aperture identified HTC specific products that directly infringe the '204 Patent by "practicing every element of the claimed inventions, including, through the use of their hotspot-enabled Accused Products acting as base stations…" Dkt. 16, ¶ 17. Aperture also attached the '204 Patent (*see id*. at Ex. A); described how HTC directly infringed one or more claims of the '204 Patent (*see id.* at ¶ 18; Ex. B (Claim Chart re: infringement of Claim 3); and identified the wireless carriers of HTC's smartphones. *Id*., Ex. C (HTC July 15, 2015 press release).

HTC argues that "Plaintiff makes no allegation – nor could it – of any contract that carriers have allowed HTCA to control the carrier's equipment or base stations – something which Plaintiff did not and could not plausibly plead." Dkt. 19, p. 9. However, Aperture alleged that HTC's Accused Products act as base stations when they are acting as hotspots and that HTC controls the base stations of others "by placing every element of Plaintiff's patented inventions

into service and receiving a benefit therefrom." *Id.*, at ¶ 18; *see also* ¶ 19 (third parties were also "controlling wireless' carriers' base stations by putting them into use"); ¶ 23 (HTC advertised how to infringe the Patent-in-Suit and that therefore, like HTC's infringement, 'HTC's customers' subsequent usage of the Accused Products . . . constitute[ed] control and therefore infringement.") ("End users benefited from each element and controlled (the invention) by placing the system as a whole into service).

As explained in *Centillion Data Systems, LLC v. QWEST Communications Int'l, Inc.*, 631 F.3d 1279, 1284 (Fed. Cir. 2011), this type of infringement – where a "party put[s] the invention into service, *i.e.*, [the party] control[s] the system as a whole and obtain[s] benefit from it" is known as divided infringement. *See also, Intellectual Ventures I LLC v. Motorola Mobility LLC*, 870 F.3d 1320, 1328 (Fed. Cir. 2017); *NTP, Inc. v. Research in Motion, Ltd.*, 418 F.3d 1282, 1284 (Fed. Cir. 2005) ("[T]o 'use' a system under Section 271(a), a party is not required to "exercise physical or direct control over each individual element of the system." Instead, "the end user must be using all portions of the claimed invention.")

Here, Aperture alleged that HTC controls every element of the representative asserted claim by putting the invention into service. Aperture contends that through discovery and expert opinion, it will prove how a remote station "initiates the patented invention – and therefore controls it – because the patented invention only comes into service once the remote stations has entered the base station's cell area (or is switched on) and initiates synchronization with the base station." Dkt. 22 at p. 12. However, at this stage of the litigation, Aperture is only required to plead, not prove, divided infringement. *See Uniloc USA, Inc. v. Activision Blizzard, Inc.*, 2014 WL 11858197 (E.D. TX 2014) ("[W]hile *Centillion* did define the standard for what constitutes "use" of a system claim, there is nothing therein to suggest the Federal Circuit intended to raise

the pleading standard for system claims.") (citing *Centillion*, 631 F.3d at 1283–84).

Because Aperture has sufficiently described the functionality of its patented CDMA system, identified the Accused Products that infringe the patented technology, and explained, including a representative chart, how the Accused Products infringe, the undersigned recommends that the Court deny HTC's motion to dismiss Aperture's direct infringement allegations.

HTC also contends Aperture's claims of contributory and induced infringement should be dismissed because Aperture failed to allege: (1) direct infringement; (2) requisite knowledge; and (3) specific intent to encourage another's infringement. As to HTC's first contention, "[i]t is axiomatic that "[t]here can be no inducement or contributory infringement without an underlying act of direct infringement." *Linear Tech. Corp. v. Impala Linear Corp*., 379 F.3d 1311, 1326 (Fed.Cir.2004) (citation omitted). As the undersigned has concluded that Aperture has sufficiently plead direct infringement, the Court considers the remaining elements of Aperture's claims of indirect infringement.

D. <u>Contributory Infringement</u>

To succeed on a contributory infringement claim, in addition to establishing that there is direct infringement, the patentee must establish that: "(1) the accused infringer had knowledge of the patent, (2) the component has no substantial non-infringing uses, and (3) the component is a material part of the invention." *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1326 (Fed. Cir. 2010).

"[C]ontributory infringement requires knowledge of the patent in suit and knowledge of patent infringement." *Commil USA v. Cisco Systems, Inc.*, 575 U.S. 632, 135 S.Ct.1920, 1926 (2015). This knowledge requirement demands "only proof of a defendant's knowledge, not

intent, that his activity cause infringement." *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1381 (Fed. Cir. 2017) (quoting *Hewlett-Packard Co. v. Bausch & Lomb Inc.*, 909 F.2d 1464, 1469 (Fed. Cir. 1990)). "When a manufacturer includes in its product a component that can only infringe, the inference that infringement is intended is unavoidable." *Ricoh Co. v. Quanta Computer Inc.*, 550 F.3d 1325, 1338 (Fed. Cir. 2008). Unlike induced infringement, contributory infringement does not have a specific-intent element. *Unisone Strategic IP, Inc. v. Life Techs. Corp.*, 2013 WL 5729487, at *4 (S.D.Cal. Oct. 22, 2013).

Here, Aperture alleged that a non-infringing use, *i.e.*, the Accused Products "adhere to the IEEE 802.011 standard when providing hotspot functionality and thus necessarily infringe." Dkt. 16, at ¶¶ 17, 20, 21(a). Thus, as to when an HTC smartphone acts as a "base" through a hotspot, Aperture has alleged that there is no substantial non-infringing use. As to the additional element of knowledge, *i.e.*, that HTC had knowledge that third parties (its customers) would infringe, Aperture alleged:

> b. On information and belief, in conducting prior art searches and freedom to operate analyses, HTC became apprised of the Patent-In-Suit. The Patent-In-Suit's inventor, Donald Schilling, holds dozens of patents related to CDMA/spread-spectrum technology, a substantial foundational body of work with which HTC was indisputably aware.
>
> c. On information and belief, HTC became aware of the Patents-In-Suit during prior litigation involving Schilling's spread-spectrum patents. *See Golden Bridge Tech., Inc. v. Apple, Inc.*, No. 2:12-cv-04014-ODW-FFMx (C.D. Cal. Jul. 18, 2012) (concerning the infringement by HTC, as well as its subsidiaries, of Schilling's patent No. 6,075,793, titled "High efficiency spread spectrum system and method"*); see also Golden Bridge Tech, Inc. v. Apple, Inc.*, No. CV-12-04882-PSG (N.D. Cal. Feb. 20, 2014).
>
> d. Furthermore, HTC has demonstrated its knowledge of the arena of spread-spectrum technology in the prosecution of its own patents. Inventors named on HTC's patents are named inventors on at least 63 patents involving spread spectrum technology. These patents demonstrate a knowledge of the body of spread spectrum patents in their citations of other spread-spectrum patents. For example, HTC's patent US-8576693-

    B2 cites the patent US-5073899-A, “Transmission system for sending two signals simultaneously on the same communications channel”.

e. To the extent defendants [sic] argue they were not aware of the Patent-in-Suit, defendants [sic] were willfully blind, which is alone sufficient to impute knowledge for contributory infringement, even in the absence of actual knowledge. *Warsaw Orthopedic, Inc. v. NuVasive, Inc.*, 824 F.3d 1344, 1347 (Fed. Cir. 2016).”

Dkt. 16, ¶ 21(b) – (e).

Because a proper assertion of willful blindness is sufficient to impute knowledge (*see Warsaw*, 824 F.3d at 1347), the Court turns first to Aperture’s assertion in Paragraph 21(e) that HTC was willfully blind. Willful blindness requires both, that (1) the defendant subjectively believes that there is a high probability that a fact exists and (2) the defendant must have taken deliberate actions to avoid learning of that fact. *Global–Tech Appliances*, 131 S.Ct. at 2068.

Aperture simply alleges that HTC previously engaged in litigation on a spread-spectrum patent that Schilling co-invented and therefore, it is plausible HTC would have been willfully blind to have not known of the ‘204 Patent. This general allegation falls short of asserting willful blindness. As explained by the Supreme Court in *Global-Tech*, “a willfully blind defendant is one who takes deliberate actions to avoid confirming a high probability of wrongdoing and who can almost be said to have actually known the critical facts.” *Global-Tech Appliances*, 563 U.S. at 769 (internal citations omitted). Willful blindness requires “active efforts by an inducer to avoid knowing about the infringing nature of the activities.” *Id.*, at 770; *see also*, *Boundaries Sols. Inc. v. CoreLogic, Inc.*, No. 14-cv-00761, 2014 WL 7463708, at *3 (N.D. Cal. Dec. 30, 2014) (noting that even "knowledge of a patent application does not suffice to show willful blindness"); *McRee v. Goldman*, No. 11-cv-00991, 2012 WL 3745190, at *3 (N.D. Cal. Aug. 28, 2012) (same).

Here, Aperture fails to allege facts from which it may be plausibly assumed that HTC engaged in active efforts to avoid knowing about the infringing nature of the alleged activities.

With regard to Aperture's allegations to support the requisite knowledge element of contributory infringement (Paragraphs 21(b), (c), and (d)), HTC objects to the language "on information and belief" used by Aperture in paragraphs 21 (b) and (c). In each of these paragraphs, however, Aperture pleads the relevant facts upon which its belief in the allegations was formed. For example, as to prior art searches and freedom to operate analyses (¶ 21(b)), Aperture alleges that HTC's awareness would have come from the dozens of patents related to the CDMA spread-spectrum technology invented by Donald Schilling. As to prior litigation (¶ 21(c)), Aperture alleges that HTC was previously sued for infringement on another of Schilling's spread-spectrum patents. And, in Paragraph 12(d), Aperture alleges HTC's knowledge in spread-spectrum technology arising from the prosecutions of its own patents (including citation to other spread-spectrum patents). Putting aside the surplusage language "on information and belief," the question becomes whether the underlying facts supporting Aperture's assertions are sufficient.

Taken together, these allegations establish a plausible basis from which one might reasonably infer that HTC had knowledge of the '204 Patent. *See, e.g.. Softview LLC v. Apple, Inc.*, 2012 WL 3061027 (D.Del. 2012) (*i.e.*, subsidiary's prosecution of its own patents; connections with inventor and general manager; and exclusive sales relationship). Accordingly, the undersigned concludes that Aperture has sufficiently plead contributory infringement and HTC's motion to dismiss this claim should be denied.

E. Induced Infringement

"Whoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. §–271(b). "[A]ctive" inducement has three elements: knowledge of the patent;

knowledge that the induced acts will infringe; and "intent to 'bring about the desired result,' which is infringement." *Commil*, 135 S.Ct. 1920 at 1928 (quoting *Global–Tech Appliances*, 563 U.S. 754); *see also Microsoft Corp. v. DataTern, Inc.*, 755 F.3d 899, 904 (Fed.Cir.2014) ("Absent the knowledge and affirmative act of encouragement, no party could be charged with inducement.").

Knowledge and specific intent are separate elements. *See In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1339 (Fed.Cir.2012) (To survive a motion to dismiss, a complaint must contain facts plausibly showing that the defendants specifically intended their customers to infringe the patent and knew that the customers' acts constituted infringement.); *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed.Cir.2006) ("[T]he intent requirement for inducement requires more than just intent to cause the acts that produce direct infringement. Beyond that threshold knowledge, the inducer must have an affirmative intent to cause direct infringement.") Specific intent to encourage infringement "can be shown by circumstantial evidence, but the mere knowledge of possible infringement will not suffice." *Vita–Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1328 (Fed.Cir.2009). Thus, that a product may be used in an infringing manner is not sufficient to establish intent. *Id*. at 1328–29. Nor is actual knowledge that some users of the product may be infringing the patent. *Id*. at 1329. Similarly, "ordinary acts incident to product distribution, such as offering customers technical support or product updates," will not support inducement liability in themselves. *Metro–Goldwyn–Mayer Studios Inc. v. Grokster*, Ltd., 545 U.S. 913, 937, 125 S.Ct. 2764, 162 L.Ed.2d 781 (2005).

On the other hand, instructions that "teach an infringing use" of the product may be sufficient to infer "an affirmative intent to infringe the patent." *Vita–Mix Corp.*, 581 F.3d at 1329

n. 2; *see also Metro–Goldwyn–Mayer Studios*, 545 U.S. at 936, 125 S.Ct. 2764 ("Evidence of 'active steps ... taken to encourage direct infringement,' ... such as advertising an infringing use or instructing how to engage in an infringing use, show an affirmative intent that the product be used to infringe. ...") (citation omitted); *Toshiba Corp. v. Imation Corp*., 681 F.3d 1358, 1365 (Fed.Cir.2012) (to be liable for induced infringement, the defendant must "go beyond describing the infringing mode" and "recommend[ ] that customers use the infringing mode"). What the patentee must allege is "culpable conduct, directed to encouraging another's infringement." *DSU Med. Corp*., 471 F.3d at 1306.

Aperture alleges that HTC knew that third parties, such as its customers, would engage in an infringing use of the '204 Patent and further, induced such infringement by publishing instruction manuals for using their products in an infringing manner and advertising infringing uses of the '204 Patent. Dkt. 16, ¶¶ 22-23. Aperture cites to specific HTC customer support websites. *Id.*, ¶ 23 n.1. Aperture fails, however, to detail how an end user would infringe the '204 Patent by following the links provided in the Amended Complaint.

While a patentee need not cite statements from the accused infringer specifically instructing the direct infringer "to perform all of the steps of the patented method" to plead allegations of specific intent sufficient to state an indirect infringement claim (*Bill of Lading*, 680 F.3d at 1341-42), mere passing references to "user manuals guides, and support articles, without ever saying what those materials contains, is insufficient for an inference of specific intent. *See CAP Co. v. McAfee, Inc*., Nos. 14-cv-05068-JD, 14-cv05091-JD, 2015 WL 3945875, at *5 (N.D. Cal. June 26, 2015). *See also, Hypermedia Navigation v. Google*, 2019 WL 1455336 at * 3 (N.D. Cal. 2019) ("[T]he complaint only states bald conclusions that an end user following YouTube instructions results in infringement. In no way does the complaint detail how an end user would

infringe…”.) Additionally, “[m]erely ‘describ[ing],’ an infringing mode is not the same as ‘recommend[ing],’ ‘encourag[ing],’ or ‘promot[ing],’ an infringing use, or suggesting that an infringing use ‘should’ be performed,” and thus descriptions of such modes fall short of induced infringement. *Takeda Pharm. U.S.A., Inc. v. W.–Ward Pharm. Corp.*, 785 F.3d 625, 631 (Fed.Cir.2015) (alterations in original) (citations omitted). The Federal Circuit has rejected the argument that direct and indirect infringement can be found because a “natural and intuitive way to employ” a product is infringing. *ACCO Brands Inc. v. ABA Locks Mfr.*, 501 F.3d 1307, 1312–13 (Fed.Cir.2007). Therefore, HTC’s sale of products that customers could use in an infringing manner—without distributing documents or taking other actions that encourage such use—does not support an inference that HTC specifically intended to induce infringement.

With respect to knowledge, Aperture relies on the same allegations made in support of its claim for contributory infringement. *See* Dkt. 16, at ¶¶ 24(a), (b), (c), and (d). While the Court previously found that the combination of these allegations may provide a plausible basis to establish the requisite knowledge as to contributory infringement, Aperture fails to allege facts here as to its inducement claim, *i.e.*, facts from which it may be plausibly inferred that HTC knew that the induced acts would infringe and intended to bring about the desired result.

Aperture is correct that, as with a claim of contributory infringement, an allegation of willful blindness can satisfy the knowledge requirement for active inducement under § 271(b) even in the absence of actual knowledge. *Global–Tech*, 131 S.Ct. at 2070; *Commil*, 135 S. Ct. at 1926. As previously noted however, Aperture failed to allege facts from which it may be plausibly assumed that HTC engaged in active efforts to avoid knowing about the infringing nature of the alleged activities and has therefore, failed to properly allege willful blindness.

Based on the foregoing, the undersigned recommends that HTC's motion to dismiss Aperture's claim of induced infringement be granted, with leave to amend.

F. Willful Infringement

Aperture alleges HTC has willfully infringed the '204 Patent. Recovery of enhanced damages for willful patent infringement is governed by 35 U.S.C. § 284 as interpreted by the United States Supreme Court in *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, —— U.S. ——, 136 S.Ct. 1923, 1935, 195 L.Ed.2d 278 (2016). In *Halo*, the Supreme Court held that the "sort of conduct warranting enhanced damages has been variously described in our cases as willful, wanton, malicious, bad- faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate." *Id*. at 1932. Thus, under *Halo*, while "courts should continue to take into account the particular circumstances of each case," enhanced damages are generally limited to "egregious cases of misconduct beyond typical infringement," such as those "typified by willful misconduct." *Id*. at 1933–35. The Federal Circuit has confirmed that "[k]nowledge of the patent alleged to be willfully infringed continues to be a prerequisite to enhanced damages." *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1341 (Fed. Cir. 2016).

Aperture asserts that "[o]n information and belief," HTC's infringement of the '204 Patent has been willful. Dkt. 16, ¶ 25. In support, Aperture alleges that HTC holds 63 patents related to the claimed technology and possesses knowledge of the Patent-in-Suit gained in the course of its prosecution of these patents, including prior art searches and freedom to operate analyses, and in HTC's previous involvement in litigation against the same inventor. Alternatively, Aperture claims that HTC was willfully blind which is alone sufficient to establish knowledge, *i.e.*, HTC could not have had a reasonable basis for believing it had the right to engage in the acts complained of herein and therefore egregiously infringed the '204 Patent.

The Court agrees with HTC that Aperture fails to sufficiently to plead claims for willful infringement because the allegations, taken as true, do not rise to the level of egregious conduct. Instead, they indicate nothing more than that HTC knew about the patent. *Halo*, 136 S. Ct. at 1936 (Breyer, J., concurring) (Enhanced damages are not appropriate "simply because the evidence shows that the infringer knew about the patent *and nothing more*.") (*emphasis* in original)). Aperture must provide facts showing that HTC engaged in behavior that was "egregious …beyond typical infringement." Accordingly, it is recommended that HTC's motion to dismiss Aperture's willful infringement claim be granted, with leave to amend.

G. Leave to Amend

Aperture requests an opportunity to amend its complaint in the event the Court decides in HTC's favor on any portion of its motion to dismiss. HTC notes that Aperture has already amended its complaint in response to HTC's earlier motion to dismiss and therefore, has shown an inability to state its claims. Dkt. 23 at 6.

Leave to amend should be "freely given" where there is no "undue delay, bad faith or dilatory motive on the part of the movant, ... undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment ...." *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *Eminence Capital, LLC v. Aspeon, Inc*., 316 F.3d 1048, 1052 (9th Cir.2003) (listing the *Foman* factors as those to be considered when deciding whether to grant leave to amend). Dismissal without leave to amend is proper only if it is clear that "the complaint could not be saved by any amendment." *Intri–Plex Techs., Inc. v. Crest Group, Inc*., 499 F.3d 1048, 1056 (9th Cir.2007) (internal citations and quotations omitted).

Here, there has been no showing of undue delay, bad faith, or undue prejudice. Nor is it clear that the claims identified for dismissal cannot be saved by any amendment.

CONCLUSION

The undersigned recommends that HTC's motion to dismiss be **granted in part and denied** in part as follows: (1) **granted and dismissing with prejudice,** Aperture's post-expiration infringement and injunctive relief claims; (2) **granted with leave to amend**, Aperture's induced and willful infringement claims; and (3) **denied** as to Aperture's direct and contributory infringement claims.

OBJECTIONS AND APPEAL

This Report and Recommendation is not an appealable order. Therefore, a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the assigned District Judge enters a judgment in the case.

Objections, however, may be filed and served upon all parties no later than **April 15, 2020**. The Clerk should note the matter for **April 17, 2020**, as ready for the District Judge's consideration if no objection is filed. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. The matter will then be ready for the Court's consideration on the date the response is due. Objections and responses shall not exceed seven (7) pages. The failure to timely object may affect the right to appeal.

DATED this 31st day of March, 2020.

BRIAN A. TSUCHIDA
Chief United States Magistrate Judge